**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq.
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

*(additional counsel on signature page)*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEAN BROWN, Individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>NANDU THONDAVADI, DHRU DESAI, THOMAS E. SAWYER, PHILIP FIRREK, and ERIC GURR,<br><br>     Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Dean Brown ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Quadrant 4 System Corporation ("Quadrant 4" or the "Company"), analysts' reports and advisories about the Company, and information readily

1

obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired the publicly traded securities of Quadrant 4 from August 14, 2012 through June 30, 2017, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4.      Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as a significant portion of the Defendants' actions, and the subsequent damages, took place within this District.

5.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff, as set forth in the accompanying Certification, purchased Quadrant 4 securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

7.      Defendant Nandu Thondavadi ("Thondavadi") was the Chief Executive Officer ("CEO") and a Director of Quadrant 4 from 2010 until his abrupt resignation on December 5, 2016.

8.      Defendant Dhru Desai ("Desai") was the Chief Financial Officer ("CFO") and a Director of Quadrant 4 from 2010 until his abrupt resignation on December 5, 2016.

9.      Defendant Thomas E. Sawyer ("Sawyer") has been a director of the Company since 2010 and a member of the Audit Committee from January 1, 2013.

10.     Defendant Philip Firrek ("Firrek") has been a director of the Company since 2014 and the Chairman of the Audit Committee since March 6, 2015.

11.     Defendant Eric Gurr ("Gurr") was a director of the Company from 2013 until his resignation on December 31, 2016 and the Chairman of the Audit Committee from January 1, 2013 through March 6, 2015.

12.     Defendants Thondavadi, Desai, Sawyer, Firrek, and Gurr are sometimes referred to herein as the "Defendants" or "Individual Defendants."

13.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

14.     The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

15.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

16.     The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

**RELEVANT NON-PARTIES**

17.     Quadrant 4 provides cloud based platform-as-a-service and software-as-a-service products to the health insurance, media, and education verticals in the United States. The Company is incorporated in Illinois and maintains an office at 1246 South River Road, Suite 102 Cranbury, New Jersey. Quadrant 4's securities are traded on the OTC Markets ("OTC") under the ticker symbol "QFOR."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements

18.     On August 14, 2012, the Company filed a Form 10-Q for the quarterly period ended June 30, 2012 (the "2012 Q2 10-Q") with the SEC, which provided the Company's quarterly financial results and position. The 2012 Q2 10-Q was signed by Defendant Desai. The 2012 Q2 10-Q also contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Thondavadi and Desai attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

19.     The 2012 Q2 10-Q provided the following results of operations:

| | Three months ending June 30, | | | |
| | 2012 | 2011 | Increase/ (Decrease) | Percent |
|---|---|---|---|---|
| Revenue | $    6,656,920 | $    8,567,333 | $    (1,910,413) | -22% |
| Cost of Revenue | (5,369,565) | (6,615,947) | (1,246,382) | -19% |
| Gross Margin | 1,287,355 | 1,951,386 | (664,031) | -34% |
| General and administrative expenses | (793,019) | (614,861) | 178,158 | 29% |
| Amortization of intangible assets | (1,011,559) | (1,096,198) | (84,639) | -8% |
| Interest and derivative expense | (314,567) | (556,574) | (242,007) | -43% |
| Net loss | $    (831,790) | $    (316,247) | $    515,543 | 163% |

| | Six months ending June 30, | | | |
| | 2012 | 2011 | Increase/ (Decrease) | Percent |
|---|---|---|---|---|
| Revenue | $    13,384,559 | $    14,002,326 | $    (617,767) | -4% |
| Cost of Revenue | (10,685,688) | (10,934,821) | (249,133) | -2% |
| Gross Margin | 2,698,871 | 3,067,505 | (368,634) | -12% |
| General and administrative expenses | (1,524,935) | (976,534) | 548,401 | 56% |
| Amortization of intangible assets | (2,023,121) | (1,755,711) | 267,410 | 15% |
| Interest and derivative expense | (840,033) | (819,114) | 20,919 | 3% |
| Net loss | $    (1,689,218) | $    (483,854) | $    1,205,364 | 249% |

20.     On November 13, 2012, the Company filed a Form 10-Q for the quarterly period ended September 30, 2012 (the "2012 Q3 10-Q") with the SEC, which provided the Company's quarterly financial results and position. The 2012 Q3 10-Q was signed by Defendant Desai. The 2012 Q3 10-Q also contained signed SOX certifications by Defendants Thondavadi and Desai

attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

21.     The 2012 Q3 10-Q provided the following results of operations:

| | Three months ending September 30, | | | |
| | 2012 | 2011 | Increase/ (Decrease) | Percent |
|---|---|---|---|---|
| Revenue | $ 6,532,571 | $ 7,834,869 | $ (1,302,298) | -17% |
| Cost of Revenue | (5,051,425) | (6,088,508) | (1,037,083) | -17% |
| Gross Margin | 1,481,146 | 1,746,361 | (265,215) | -15% |
| General and administrative expenses | (992,609) | (465,753) | 526,856 | 113% |
| Amortization of intangible assets | (1,011,560) | (1,122,627) | (111,067) | -10% |
| Interest and derivative expense | (391,765) | (368,810) | 22,955 | 6% |
| Net loss | $ (914,788) | $ (210,829) | $ 703,959 | 334% |

| | Nine months ending September 30, | | | |
| | 2012 | 2011 | Increase/ (Decrease) | Percent |
|---|---|---|---|---|
| Revenue | $ 19,917,130 | $ 21,837,195 | $ (1,920,065) | -9% |
| Cost of Revenue | (15,737,113) | (17,023,329) | (1,286,216) | -8% |
| Gross Margin | 4,180,017 | 4,813,866 | (633,849) | -13% |
| General and administrative expenses | (2,517,544) | (1,436,039) | 1,081,505 | 75% |
| Amortization of intangible assets | (3,034,681) | (2,878,338) | 156,343 | 5% |
| Interest and derivative expense | (1,231,798) | (1,194,174) | 37,624 | 3% |
| Net loss | $ (2,604,006) | $ (694,685) | $ 1,909,321 | 275% |

22.     On March 29, 2013, the Company filed a Form 10-K for the fiscal year ended December 31, 2012 (the "2012 10-K") with the SEC, which provided the Company's annual and quarterly financial results and position. The 2012 10-K was signed by Defendants Thondavadi, Desai, and Sawyer. The 2012 10-K also contained signed SOX certifications by Defendants Thondavadi and Desai attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

23.     The 2012 10-K stated the following regarding the Company's internal control over financial reporting:

Management's Report on Internal Control Over Financial Reporting

The Company's management is responsible for establishing and maintaining adequate internal control over financial reporting.  Internal control over financial reporting is defined in Rule 13a-15(f) and 15d-15(f) under the 1934 Act as a process designed by, or under the supervision of, the Company's principal executive officer and principal financial officer, respectively, and effected by the Company's management and other personnel to provide reasonable assurance regarding the reliability of financial reporting and the preparation of consolidated financial statements for external purposes in accordance with generally accepted accounting principles and includes those policies and procedures that:

■ pertain to the maintenance of records that in reasonable detail accurately and fairly reflect the transactions and dispositions of assets;

■ provide reasonable assurance that transactions are recorded as necessary to permit preparation of consolidated financial statements in accordance with generally accepted accounting principles, and that receipts and expenditures are being made only in accordance with authorizations of the Company's management; and

■ provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use or disposition of assets that could have a material effect on the consolidated financial statements

Management is committed to continuous improvement in all areas of controls and procedures. The Company has added additional human resources in its accounting and finance departments and instituted additional procedures to review its interim financial statements and significant transactions with audit committee on a regular basis.

***Based on this evaluation, our management concluded that our internal controls over financial reporting were operating effectively as of December 31, 2012.***

(Emphasis added).

24.     The 2012 10-K provided the following results of operations:

|  | Year Ended December 31, | | Increase/ (Decrease) | Percent |
|---|---|---|---|---|
|  | **2012** | **2011** |  |  |
| Revenue | $ 26,561,723 | $ 29,141,433 | $ (2,579,710) | 9% |
| Cost of Revenue | (20,185,244) | (22,265,260) | (2,080,016) | 9% |
| Gross Margin | 6,376,479 | 6,876,173 | (499,694) | 7% |
| General and administrative expenses | (3,389,246) | (2,262,420) | 1,126,826 | 50% |
| Amortization and impairment of intangible assets | (6,985,242) | (3,132,666) | 3,852,576 | 123% |
| Interest expense | (1,833,018) | (1,629,743) | 203,275 | 12% |
| Derivative gain | 154,165 | - | 154,165 | 100% |
| Net loss before Income taxes | (5,676,862) | (148,656) | (5,525,573) | |
| Income taxes | | - | | |
| Net loss | $ (5,676,862) | $ (148,656) | $ (5,528,206) | |

25.    On March 17, 2014, the Company filed a Form 10-K for the fiscal year ended December 31, 2013 (the "2013 10-K") with the SEC, which provided the Company's annual and quarterly financial results and position. The 2013 10-K was signed by Defendants Thondavadi, Desai, and Sawyer. The 2013 10-K also contained signed SOX certifications by Defendants Thondavadi and Desai attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

26.    The 2013 10-K stated the following regarding the Company's internal control over financial reporting:

Management's Report on Internal Control Over Financial Reporting

The Company's management is responsible for establishing and maintaining adequate internal control over financial reporting.  Internal control over financial reporting is defined in Rule 13a-15(f) and 15d-15(f) under the 1934 Act as a process designed by, or under the supervision of, the Company's principal executive officer and principal financial officer, respectively, and effected by the Company's management and other personnel to provide reasonable assurance regarding the reliability of financial reporting and the preparation of consolidated financial statements for external purposes in accordance with generally accepted accounting principles and includes those policies and procedures that:

■pertain to the maintenance of records that in reasonable detail accurately and fairly reflect the transactions and dispositions of assets;

■ provide reasonable assurance that transactions are recorded as necessary to permit preparation of consolidated financial statements in accordance with generally accepted accounting principles, and that receipts and expenditures are being made only in accordance with authorizations of the Company's management; and

■ provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use or disposition of assets that could have a material effect on the consolidated financial statements

During November 2013, management and certain investors identified that 870,000 shares for a series of subscriptions received by the company were never issued. Because the subscriptions received were not reconciled to the stock transfer agent/issuance records, this constitutes a significant deficiency. Management has taken steps in 2013 to account for and match equity transactions on a timely basis.

Management is committed to continuous improvement in all areas of controls and procedures. The Company has added additional human resources in its accounting and finance departments and instituted additional procedures to review its interim financial statements and significant transactions with audit committee on a regular basis.

***Based on this evaluation, our management concluded that our internal controls over financial reporting were operating effectively as of December 31, 2013.***

(Emphasis added).

27.     The 2013 10-K provided the following results of operations:

|  | Year Ended December 31, | | Increase/(Decrease) | Percent |
|---|---|---|---|---|
|  | 2013 | 2012 | | |
| Revenue | $ 37,343,676 | $ 26,561,723 | $ 10,781,953 | 41 % |
| Cost of Revenue | 27,709,310 | 20,185,244 | (7,524,066) | 37 % |
| Gross Margin | 9,634,366 | 6,376,479 | 3,257,887 | 51 % |
| General and administrative expenses | (5,271,369) | (3,389,246) | (1,882,123) | 56 % |
| Amortization and impairment of intangible assets | (5,962,761) | (6,985,242) | 1,022,481 | -15 % |
| Settlement of earn-outs | 1,007,313 | - | 1,007,313 | 100 % |
| Financing related expenses | (692,000) | - | (692,000) | 100 % |
| Interest expense | (2,571,311) | (1,833,018) | (738,293) | 40 % |
| Derivative gain/(Loss) | (287,429) | 154,165 | (441,594) | -286 % |
| Net loss before Income Taxes | (4,143,191) | (5,676,862) | 1,533,671 | 27 % |
| Income taxes | - | - | - | |
| Net loss | $ (4,143,191) | $ (5,676,862) | $ 1,533,671 | 27 % |

28.     On August 21, 2015, the Company filed a Form 10-K for the fiscal year ended December 31, 2014 (the "2014 10-K") with the SEC, which provided the Company's annual and quarterly financial results and position. The 2014 10-K was signed by Defendants Thondavadi, Desai, and Sawyer. The 2014 10-K also contained signed SOX certifications by Defendants Thondavadi and Desai attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

29.     The 2014 10-K provided the following results of operations:

|  | Year Ended December 31, | | | |
|  | 2014 | 2013 | Increase/ (Decrease) | Percent |
|---|---|---|---|---|
| Revenue | $ 48,492,349 | $ 37,343,676 | $ 11,148,673 | 30% |
| Cost of Revenue | 30,917,470 | 25,741,396 | 5,176,074 | 20% |
| Gross Margin | 17,574,879 | 11,602,280 | 5,972,599 | 51% |
| General and administrative expenses | (8,467,919) | (5,212,369) | (3,255,550) | 62% |
| Research & Development | (2,655,980) | (2,026,914) | (629,066) | 31% |
| Amortization, depreciation and impairment of intangible assets | (5,642,942) | (7,512,761) | 1,869,819 | (25%) |
| Settlement of earn-outs | - | 1,007,313 | (1,007,313) | (100%) |
| Litigation settlement | - | (692,000) | 692,000 | (100%) |
| Interest expense | (1,877,406) | (4,999,121) | 3,121,715 | (62%) |
| Derivative expense | - | (383,273) | 383,273 | (100%) |
| Net Profit /(loss) before Income Taxes | (1,069,368) | (8,216,845) | 7,147,477 | (87%) |
| Income taxes | - | - | - | |
| Net Profit /(loss) | $ (1,069,368) | $ (8,216,845) | $ 7,147,477 | (87%) |

30.     On March 28, 2016, the Company filed a Form 10-K for the fiscal year ended December 31, 2015 (the "2015 10-K") with the SEC, which provided the Company's annual and quarterly financial results and position. The 2015 10-K was signed by Defendants Thondavadi, Desai, and Firrek. The 2015 10-K also contained signed SOX certifications by Defendants Thondavadi and Desai attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

31.     The 2015 10-K provided the following results of operations:

|  | Year Ended December 31, | | | |
|  | 2015 | 2014 | Increase/ (Decrease) | Percent |
|---|---|---|---|---|
| Revenue | $ 52,038,044 | $ 48,492,349 | $ 3,545,695 | 7% |
| Cost of revenue | 31,168,394 | 30,917,470 | 250,924 | 1% |
| Gross margin | 20,869,650 | 17,574,879 | 3,294,771 | 19% |
| General and administrative expenses | (12,353,824) | (8,467,919) | (3,885,905) | 46% |
| Research & development | (1,849,389) | (2,655,980) | 806,591 | (30%) |
| Amortization, depreciation and impairment of intangible assets | (5,238,582) | (5,642,942) | 404,360 | (7%) |
| Interest expense | (1,943,771) | (1,877,406) | (66,365) | 4% |
| Net loss before income taxes | (515,916) | (1,069,368) | 553,452 | (52%) |
| Income taxes | - | - | - | |
| Net loss | $ (515,916) | $ (1,069,368) | $ 553,452 | (52%) |

32.     On May 16, 2016, the Company filed a Form 10-Q for the quarterly period ended March 31, 2016 (the "2016 Q1 10-Q") with the SEC, which provided the Company's quarterly financial results and position. The 2016 Q1 10-Q was signed by Defendant Desai. The 2016 Q1

10-Q also contained signed SOX certifications by Defendants Thondavadi and Desai attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

33.     The 2016 Q1 10-Q provided the following results of operations:

| | **Three months ending March 31,** | | | |
| | **2016** | **2015** | **Increase/ (Decrease)** | **Percent** |
|---|---|---|---|---|
| Revenue | $ 11,938,599 | $ 13,638,646 | $ (1,700,047) | (12%) |
| Cost of Revenue | 7,818,539 | 8,346,313 | (527,774) | (6%) |
| Gross Margin | 4,120,060 | 5,292,333 | (1,172,273) | (22%) |
| General and administrative expenses | (3,064,781) | (2,799,340) | (265,441) | 9% |
| Research & Development | (290,577) | (570,228) | 279,651 | (49%) |
| Amortization, depreciation and impairment expense | (1,481,387) | (1,321,259) | (160,128) | 12% |
| Interest expense | (462,307) | (515,229) | 52,922 | (10%) |
| Net (loss)/income | $ (1,178,992) | $ 86,277 | $ (1,265,269) | (1467%) |

34.     On August 15, 2016, the Company filed a Form 10-Q for the quarterly period ended June 30, 2016 (the "2016 Q2 10-Q") with the SEC, which provided the Company's quarterly financial results and position. The 2016 Q2 10-Q was signed by Defendant Desai. The 2016 Q2 10-Q also contained signed SOX certifications by Defendants Thondavadi and Desai attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

35.     The 2016 Q2 10-Q provided the following results of operations:

| | Three months ending June 30, | | | |
| | 2016 | 2015 | Change | Percent |
|---|---|---|---|---|
| Revenue | $ 14,564,628 | $ 13,069,754 | $ 1,494,874 | 11% |
| Cost of Revenue | (8,544,770) | (7,684,286) | 860,484 | 11% |
| Gross Margin | 6,019,858 | 5,385,468 | 634,390 | 12% |
| General and administrative expenses | (3,086,134) | (3,246,518) | (160,384) | (5%) |
| Research & Development | (64,249) | (469,795) | (405,546) | (86%) |
| Amortization, depreciation and impairment expense | (1,331,594) | (1,020,357) | 311,237 | 31% |
| Reversal of assignment of legal judgment | 692,000 | - | 692,000 | 100% |
| Interest expense | (1,211,580) | (522,190) | (689,340) | (132%) |
| Net Income | $ 1,018,301 | $ 126,608 | $ 891,693 | 704% |

| | Six months ending June 30, | | | |
| | 2016 | 2015 | Change | Percent |
|---|---|---|---|---|
| Revenue | $ 26,503,227 | $ 26,708,400 | $ (205,173) | (1%) |
| Cost of Revenue | (16,363,309) | (16,030,599) | 332,710 | 2% |
| Gross Margin | 10,139,918 | 10,677,801 | (537,883) | (5%) |
| General and administrative expenses | (6,150,915) | (6,045,858) | 105,057 | 2% |
| Research & Development | (354,826) | (1,040,023) | (685,197) | (66%) |
| Amortization, depreciation and impairment expense | (2,812,981) | (2,341,616) | (471,365) | (20%) |
| Reversal of assignment of legal judgment | 692,000 | - | 692,000 | 100% |
| Interest expense | (1,673,887) | (1,037,419) | (636,438) | (61%) |
| Net Income/(Loss) | $ (160,691) | $ 212,885 | $ (373,576) | (175%) |

36.     On November 14, 2016, the Company filed a Form 10-Q for the quarterly period ended September 30, 2016 (the "2016 Q3 10-Q") with the SEC, which provided the Company's quarterly financial results and position. The 2016 Q3 10-Q was signed by Defendant Desai. The 2016 Q3 10-Q also contained signed SOX certifications by Defendants Thondavadi and Desai attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

37.     The 2016 Q3 10-Q provided the following results of operations:

| | Three months ending September 30, | | | |
| | 2016 | 2015 | Change | Percent |
|---|---|---|---|---|
| Revenue | $ 15,680,384 | $ 12,690,876 | $ 2,989,508 | 24% |
| Cost of Revenue | (9,808,823) | (7,389,377) | 2,419,446 | 33% |
| Gross Margin | 5,871,561 | 5,301,499 | 570,062 | 11% |
| General and administrative expenses | (3,539,481) | (2,966,097) | (573,384) | (19%) |
| Research & Development | (68,062) | (417,997) | 349,935 | 84% |
| Amortization, depreciation and impairment expense | (1,607,116) | (1,349,401) | (257,715) | (19%) |
| Reversal of assignment of legal judgment | - | - | - | |
| Interest expense | (730,258) | (516,439) | (213,819) | (41%) |
| Net Income | $ (73,356) | $ 51,565 | $ (124,921) | (242%) |

| | Nine months ending September 30, | | | |
| | 2016 | 2015 | Change | Percent |
|---|---|---|---|---|
| Revenue | $ 42,183,611 | $ 39,399,276 | $ 2,784,335 | 7% |
| Cost of Revenue | (26,172,132) | (23,419,976) | 2,752,156 | 12% |
| Gross Margin | 16,011,479 | 15,979,300 | 32,179 | - |
| General and administrative expenses | (9,690,396) | (9,011,955) | (678,441) | (8%) |
| Research & Development | (422,888) | (1,458,020) | (1,035,132) | (71%) |
| Amortization, depreciation and impairment expense | (4,420,097) | (3,691,017) | (729,080) | (20%) |
| Reversal of assignment of legal judgment | 692,000 | - | 692,000 | 100% |
| Interest expense | (2,404,145) | (1,553,858) | (850,287) | (55%) |
| Net Income/(Loss) | $ (234,047) | $ 264,450 | $ (498,497) | (189%) |

38.     The statements referenced in ¶¶ 15 - 34 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that:  (1) Defendants Thondavadi and Desai engaged in an accounting fraud scheme that misled investors; (2) Defendants Thondavadi and Desai stole more than $4 million from the Company; (3) Defendants Thondavadi and Desai caused the Company to understate its liabilities and inflate its revenues and assets and evaded scrutiny by lying to the Company's auditors and providing them with forged and doctored documents; and (4) as a result, Defendants' public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

39.     On November 30, 2016, the Department of Justice announced that Defendant

Thondavadi had been charged for mispresenting the Company's financial condition, stating in part:

Department of Justice
U.S. Attorney's Office
Northern District of Illinois

FOR IMMEDIATE RELEASE                          Wednesday, November 30, 2016

CEO of Schaumburg Consulting Firm Arrested on Fraud Charges for
Misrepresenting Company's Financial Condition

CHICAGO — The chief executive of a publicly-traded consulting firm has been
charged in federal court with fraudulently misrepresenting the company's financial
condition and lying to regulators.

NANDU THONDAVADI, the CEO of Schaumburg-based Quadrant 4 System
Corp., intentionally misrepresented the firm's cash flow and concealed its liabilities
in filings with the U.S. Securities and Exchange Commission, according to a
criminal complaint and affidavit filed in U.S. District Court in Chicago.
Thondavadi certified filings that misrepresented and concealed from the company's
auditors and shareholders the terms of certain acquisitions and the amount of a
liability stemming from a lawsuit, the complaint states.  The misrepresentations and
concealments were intended to artificially inflate the company's share price,
according to the complaint.

The complaint charges Thondavadi and Quadrant 4's chief financial officer, DHRU
DESAI, with one count of wire fraud and one count of willfully certifying false
financial reports.  Thondavadi faces an additional charge of making false statements
to the SEC.

Thondavadi, 62, of North Barrington, and Desai, 55, of Barrington, were arrested
this morning.  They are scheduled to make initial court appearances today at 11:30
a.m. before U.S. Magistrate Judge Michael T. Mason.

Also this morning, federal authorities executed a search warrant at Quadrant 4's
corporate headquarters in the 1500 block of East Woodfield Road in Schaumburg.

The complaint and arrests were announced by Zachary T. Fardon, United States
Attorney for the Northern District of Illinois; and Michael J. Anderson, Special
Agent in Charge of the Chicago office of the Federal Bureau of Investigation.  The
SEC assisted in the investigation.

Quadrant 4 has offices in seven U.S. states as well as India.  It provides software products, platforms and consulting services to customers in the healthcare and education sectors.  As a publicly traded company, Quadrant 4 is required to provide to the SEC on a quarterly and annual basis a detailed report of its financial condition.

Federal authorities launched an investigation of the company earlier this year based on indications that the firm's recent annual reports to the SEC contained false information, the complaint states.  The investigation revealed that Thondavadi and Desai certified the reports even though they knew the documents did not fairly present the true financial condition of the company, according to the complaint. Thondavadi then lied under oath when questioned by the SEC in May about some of the falsehoods, the complaint states.

40.     On this news, shares of Quadrant 4 fell $0.16 per share or over 80% from its

previous closing price to close at $0.03 per share on December 1, 2016, damaging investors.

41.     On June 30, 2017, the SEC announced that it had charged the Company and

Defendants Thondavadi and Desai with accounting fraud, stating in part:

SEC Charges Information Technology Company and Former Executives With Accounting Fraud

FOR IMMEDIATE RELEASE
2017-122

Washington D.C., June 30, 2017—
The Securities and Exchange Commission has charged Chicago-area information technology company Quadrant 4 System Corp. (QFOR) and two former top executives in an accounting fraud scheme that misled investors and allowed the former executives to siphon millions from the firm for their personal benefit.

The SEC's complaint, filed yesterday in the U.S. District Court for the Northern District of Illinois, alleges that former chief executive officer Nandu Thondavadi and former chief financial officer Dhru Desai stole more than $4 million from Schaumburg, Illinois-based QFOR over a nearly five-year period. The former executives also are alleged to have caused QFOR to understate its liabilities and inflate its revenues and assets, evading scrutiny by lying to the company's auditors and providing them with forged and doctored documents.

According to the SEC's complaint, the alleged scheme continued until November 2016, when Thondavadi and Desai were arrested and criminally charged with fraud. QFOR announced their resignations in December 2016 and disclosed that the

company's financial reports could no longer be relied upon and required a restatement.

"As alleged in our complaint, Thondavadi and Desai perpetrated a multi-faceted scheme to mislead investors about QFOR's financial condition and secretly enrich themselves," said David Glockner, Director of the SEC's Chicago Regional Office.

The SEC's complaint charges QFOR with filing false and misleading quarterly, annual, and other reports, failing to make and keep accurate books and records, and internal accounting control failures. Subject to court approval, and without admitting or denying the allegations, QFOR consented to an order to permanently enjoin the company from further antifraud, reporting, books and records, and internal control violations. The court will determine at a later date whether disgorgement or a financial penalty should be imposed against QFOR.

Thondavadi and Desai are charged with multiple violations, including fraud, falsifying books and records, lying to auditors, falsely certifying QFOR's filings, and aiding and abetting QFOR's alleged violations.

42. On this news, shares of Quadrant 4 fell $0.008 per share or 40% from its previous closing price to close at $0.012 per share on June 30, 2017, further damaging investors.

43. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

44. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Quadrant 4 securities publicly traded on the OTC during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

45.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Quadrant 4 securities were actively traded on the OTC. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

46.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

47.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

48.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

- whether the prices of Quadrant 4 securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

49.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

50.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Quadrant 4 securities are traded in efficient markets;

- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the OTC, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold Quadrant 4 securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

51.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

52.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against Defendants Thondavadi, Desai, Sawyer, and Firrek

53.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

54.     This Count is asserted against Defendants Thondavadi, Desai, Sawyer, and Firrek and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

20

55.     During the Class Period, Defendants Thondavadi, Desai, Sawyer, and Firrek, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

56.     Defendants Thondavadi, Desai, Sawyer, and Firrek violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Quadrant 4 securities during the Class Period.

57.     Defendants Thondavadi, Desai, Sawyer, and Firrek acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them

privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

58.     Defendants Thondavadi, Desai, Sawyer, and Firrek, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

59.     As a result of the foregoing, the market price of Quadrant 4 securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants Thondavadi, Desai, Sawyer, and Firreks' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Quadrant 4 securities during the Class Period in purchasing Quadrant 4 securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

60.     Had Plaintiff and the other members of the Class been aware that the market price of Quadrant 4 securities had been artificially and falsely inflated by Defendants Thondavadi, Desai, Sawyer, and Firrek's misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased Quadrant 4 securities at the artificially inflated prices that they did, or at all.

61.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

62.     By reason of the foregoing, Defendants Thondavadi, Desai, Sawyer, and Firrek have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable

to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of Quadrant 4 securities during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against The Individual Defendants

63.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

64.     By reason of the foregoing, the Company violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder.

65.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

66.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

67.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section

20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Quadrant 4 securities.

68.     Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

69.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: July 5, 2017                          Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/ Laurence M. Rosen
Laurence M. Rosen
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Tel: (212) 697-6484
Fax: (212) 697-7296
Email: peretz@bgandg.com

Additional Counsel for Plaintiff

25